MONTGOMERY COUNTY BOARD OF APPEALS
*v.* WALKER ET UX.

[No. 280, September Term, 1961.]

*Decided May 11, 1962.*

576

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Albert H. Carter, County Attorney for Montgomery County,* with whom was *Richard J. Sincoff, Assistant County Attorney,* on the brief, for appellant.

*C. Edward Nicholson* for appellees.

SYBERT, J., delivered the opinion of the Court.

In this appeal we are asked to decide whether the Circuit Court for Montgomery County erred in ordering a member of the Zoning Board of that county to participate and vote on a rezoning application before the Board with respect to which that member sought to disqualify himself because of certain personal and financial interests. The appeal also questions that part of the order which would require the concurring vote of at least three members of the five member Board in order effectually to grant or deny the application, because, in the court's opinion, a 2-2 vote of the other members of the Board did not amount to a denial which the court could review.

The appellees, Albert W. Walker and his wife, applied on September 23, 1960 to the Montgomery County Board of Appeals for a special exception to permit off-street parking on single-family residential property owned by them. Under the Zoning Ordinance, the Board of Appeals exercises original jurisdiction in special exception cases. A previous application by the same parties had been rejected in February, 1954. On the first day of the hearing on the 1960 application the Board consisted of only four members because of a previously created vacancy. Between the first and second hearing days Philip M. Fairbanks, an attorney, was appointed to fill the vacancy.

At the outset of the second hearing day, Mr. Fairbanks stated he was disqualifying himself in the matter because he had previously resided in the community where the special exception was sought and had vigorously opposed the original application by appellees in 1954, and also because, since the time of the first application, he had continuously been legal counsel for an apartment house corporation of which one of the applicants, Mr. Walker, is the sole owner. On that day and on two subsequent days the hearing proceeded before the other four members of the Board. When they finally voted on the matter the result was a 2-2 split and the Board's notice of action contained the statement that the application "failed for want of a majority".

An appeal was taken by appellees to the Circuit Court which, after argument on the merits, made a finding that the Board had failed to make a decision in the matter since three members had not concurred as purportedly required by the Zoning Ordinance, and that there was nothing in the record to excuse any member of the Board from participating. Mr. Fairbanks was ordered to show cause why he should not participate, and after a hearing the trial judge remanded the case to the Board for participation of every member. In the trial court's opinion, Mr. Fairbanks had not shown sufficiently "substantial or grave reasons" for disqualifying himself. The Board appeals here from the order of the trial court, contending that Mr. Fairbanks was entitled to disqualify himself under the circumstances and that the resulting tie vote by the other members of the Board amounted to a denial of the application which was reviewable as such by the Circuit Court.

Appellees have made two motions to dismiss the appeal of the Board, the first on the ground that the appeal is prematurely taken, and the second on the theory that the Board is not a proper party to the appeal.

The first argument for dismissal is based on the fact that the trial court made no finding as to the merits of appellees' application for a special exception, but merely remanded the case to the Board with the direction to Mr. Fairbanks to participate and vote in the matter. Appellees claim that Maryland

Rule 835 a, which prohibits appeals from *pro forma* orders, renders the appeal premature and that the issues now being raised can be heard by this Court at such time as this cause is heard on its merits with no prejudice to the appellant. We do not think this contention is sound. While it is true that no final decision was made on the merits of the application for a special exception, the trial court did in fact determine finally that Mr. Fairbanks was not justified in disqualifying himself and that the resulting tie vote of the Board did not constitute an effective denial of the application. If the case were remanded to the Board at this point for a vote of all members, it is manifest that the question as to whether Mr. Fairbanks is required to vote would become moot, he already having voted. With the disputed act accomplished, it would then be too late to cure the mischief and prejudice that appellant alleges would result from his vote. Likewise, the question as to the effect of a tie vote can only properly be answered now, since a vote by all members of the Board on the merits cannot result in a tie vote. Both of these issues have been decided finally below and are distinct from the merits of the underlying controversy and this appeal can therefore be distinguished from the appeals which were dismissed in the cases cited by appellees, *Hayden v. Walker*, 208 Md. 114, 117 A. 2d 109 (1955), and *Nuova Realty Co. v. City of Balto.*, 197 Md. 266, 78 A. 2d 765 (1951). Each of those cases involved remand of a case to a zoning board, in *Hayden* for the taking of additional testimony, and in *Nuova Realty Co.* for the purpose of fully hearing the controversy before the board. Unlike this case, the questions raised in both of those appeals were clearly preserved for answer on any subsequent appeal.

The second ground urged for dismissal is predicated upon the theory that in the absence of statutory authorization a zoning board has no right to appeal from the decision of a trial court that is adverse to its own finding on the merits of a case. Appellees cite *Roeder v. Brown*, 192 Md. 639, 65 A. 2d 333 (1949), and *Zoning Appeals Board v. McKinney*, 174 Md. 551, 199 Atl. 540 (1938), to support this contention. For a thorough review of this thorny area see 2 *Metzenbaum, Law*

of *Zoning* (2nd ed.), pp. 1046, *et seq.* However, we need not decide whether the Board in this case had such a right of appeal *under that theory.* The case before us is not the ordinary zoning appeal on the merits of a finding by the Board, but is from the court's final decision as to Board procedure. Here the correctness of the Board's conclusion as to the application for a special exception is not in question but rather the very integrity of the Board itself. The challenge here is to the effectiveness of the Board's action when only four of its members are present, and where the final action of the Board results in a deadlock vote. In addition, the right of a member of the Board to withdraw because of personal interests is being denied on the ground of the unsubstantial nature of that claim. The Montgomery County Code (1960), § 2-88, provides that "Any party to the proceeding in the circuit court aggrieved by the decision of the court may appeal from such decision to the court of appeals * * *." The Board here was a party to the proceedings below, and when the validity of its procedures was questioned, an appeal was properly taken by the County Attorney for the *whole Board,* which would of course also include Mr. Fairbanks. Since the Board and its members are the real parties in interest in the matter before us, it would be unrealistic to characterize the Board as a disinterested body, the rationale applied in denial of the right of appeal to a zoning board in the *McKinney* and *Roeder* cases. We therefore deny both motions to dismiss this appeal and will answer the contentions raised herein by appellant.

I

Appellant first urges that under applicable principles Mr. Fairbanks as a member of the Board was justified in disqualifying himself from participating in the decision of the Board as to the 1960 application by appellees for the special exception. We think this contention is well founded.

As appellant noted in its brief, the posture of this question appears to be novel in that here the public officer is himself seeking to establish his disqualification by interest to participate in a decision, and appellees are seeking to require his participation. While the more usual situation is that of a

public officer seeking to prevent his disqualification as to a decision already rendered, the principles governing both situations are the same. Whether, in a particular case, a disqualifying interest exists, is a factual question and is governed by the circumstances of that case, and the enunciation of a definitive rule is not possible. However, it is clear that when one accepts a public office, he assumes the responsibility of performing the duties imposed with complete fidelity, and public policy requires that personal or pecuniary interests that would constitute a possible factor of influence in regard to his official actions should be nonexistent. *Williams v. State,* 315 P. 2d 981 (Ariz. 1957). Cf. Comment in *Kreatchman v. Ramsburg,* 224 Md. 209, 214, 167 A. 2d 345 (1961).

It is argued that both Mr. Fairbanks' personal and pecuniary interests in the outcome of the Board's decision on the application for a special exception were remote since he no longer resided in the community and since his employment by the corporation owned by the applicant did not specifically involve the subject matter before the Board. However, it is not for us to say that his once intense personal interest had subsided to the point where he could render an objective decision, particularly in view of his own feeling of disqualification on this score; nor can we say that the fact of his employment by a corporation wholly owned by one of the interested parties could be thrust aside in complete subservience to his public duty. Mr. Fairbanks testified that under the circumstances he didn't see how he could sit in objective judgment on the case, or in good conscience vote either way. Influences which could affect the mind of one in a position of public trust are so subtle and difficult to appreciate, that in the end our decision must be guided by the general principle that no public officer who has a personal or pecuniary interest, direct or indirect, in the outcome of a case should participate in that matter. As was stated by the Supreme Court of Errors of Connecticut:

> "* * * It is the policy of the law to keep the official so far from temptation as to ensure his unselfish devotion to the public interest. * * * The modification of

zoning regulations * * * whether it be denominated legislative or quasi-judicial, should command the highest public confidence, since zoning restrictions limit a person's free use of his real estate in the interest of the general public good. Anything which tends to weaken public confidence and to undermine the sense of security of individual rights which a citizen is entitled to feel is against public policy.* * *"

*Mills v. Town Plan and Zoning Commission,* 134 A. 2d 250, 253 (Conn. 1957). The circumstances of this case were such that in our view the decision of Mr. Fairbanks to disqualify himself was justified and consonant with the objective of maintaining the unqualified integrity of the determination.

"* * * Even when conduct would not actually produce distrust in the minds of others but might only create a suspicion of unfairness in the mind of the party to which the decision was adverse, it is far better 'that no room be given for suspicion or cavil. * * *' "

*Koslow v. Board of Zoning Appeals,* 112 A. 2d 513, 515 (Conn. 1955).

Or, as it was put in a terse quotation centuries ago by an eminent biographer, "Caesar's wife must be above suspicion." Plutarch, *Lives: Julius Caesar,* § 10.

## II

Since we have found that Mr. Fairbanks properly disqualified himself, we must also consider appellant's second contention as to the effect of the tie vote of the Board.

The Zoning Ordinance—§ 104-22 (d), Montgomery Co. Code (1960)—states in part that: "All actions or decisions of the Board shall be taken by resolution, in which at least three members must concur.* * *" Relying on this provision the trial court concluded that since there was not a concurrence of three of the five members of the Board, no decision resulted from the 2-2 vote on the application for a special exception. Conversely, the appellant's position is that the failure

of the proponent to obtain three affirmative votes was in legal effect a denial of the application upon which judicial review could be exercised. We agree with appellant's view.

While the effect of a tie vote under the circumstances presented has not been considered in any reported case in this State, the reasoning used by this Court in *M. & C. C. of Balto. v. Biermann,* 187 Md. 514, 50 A. 2d 804 (1947), is nevertheless persuasive here. In that case the five member Zoning Board was acting under a statute requiring the "concurring vote of four members of the Board * * * to reverse any order * * * decision or determination * * * or to decide in favor of the applicant." When the Board's action upon an application for a gasoline station permit resulted in a 3-2 vote, the Board ruled that the application had been denied. On appeal to the Baltimore City Court, the *decision* of the Board was reversed and the permit granted. On appeal to this Court, the effect of the adverse vote by the Board on its function as a fact-finding body was in question, and in this respect this Court stated (at 522 of 187 Md.) : "We hold that although the Board was precluded, by the adverse vote, from acting as a fact-finding body, this fact *did not render its action a nullity* * * *." (Emphasis supplied.) This Court reinstated the decision of the Board as a proper exercise of police power under the circumstances. The failure to achieve the "concurring vote of four members of the Board" as required by the statute was in effect accepted as constituting a denial.

For a similar result in another jurisdiction, see *Sokolis v. Zoning Board of Appeals of Springfield,* 157 N. E. 2d 427 (Ill. 1959), where a seven member board reached a 3-3 tie vote and the court held that, while the board's action was not a decision on questions of fact, it constituted an effective denial of the requested variance allowing court review since the necessary four votes of affirmance had not been achieved.

Additional decisions from other jurisdictions support our conclusion. In *Stafford Smith v. Zoning Board of Adjust. of Madison,* 158 A. 2d 223 (N. J. 1960), a recently appointed fifth member of a zoning board disqualified himself in regard to a hearing on an application for a variance, since he had not

participated in the case from its inception. The board's vote in that case was 2-2. The relevant New Jersey statute (R. S. 40:55-41, N. J. S. A.) provided:

> "The concurring vote of three members of the board of adjustment shall be necessary to reverse any order, requirement, decision or determination of any such administrative officer, or to decide in favor of the applicant any matter upon which it is required to pass under any such ordinance, or to effect or recommend any exceptions to or variations from such ordinance."

In answer to a contention that the tie vote of the board decided nothing, the New Jersey Superior Court, Appellate Division, stated (at 226 of 158 A. 2d): "* * * [W]e hold that the failure to obtain three affirmative votes * * * must be deemed a denial of the application, even when the vote is a tie, and the applicant may seek review accordingly." See also *Miller v. Board of Adjustment*, 171 A. 2d 8 (N. J. 1961).

In *Steers Sand & Gravel Corp. v. Village Board*, 129 N. Y. S. 2d 403 (1954), application was made for a zoning change to the proper board. The statute provided that "not less than a majority of the whole number [of the board] may perform and exercise such power * * *." At the hearing four members of the five-member board were present and one disqualified himself and did not vote. The resulting 2-1 vote against the application was challenged as insufficient to constitute legal and binding action by the board. However, the court rejected this contention and held (at 405):

> "* * * Lawfully to *consider* the petition, a majority of the Board's authorized membership, i.e., at least three members, were required to be present at the hearing, and to *grant* it, the concurrence of a similar majority was necessary. Such a concurrence was not required to deny the petition. The vote of less than a majority of the authorized membership in favor of the petition, was sufficient to defeat it." (Court's emphasis.)

In our view, the 2-2 vote of the Board constituted an effective denial of appellees' application, and the action was reviewable by the trial court on the merits of the case. Therefore the order of the trial court will be reversed.

> *Order reversed; case remanded for further proceedings consistent with this opinion; costs to be paid by appellees.*